IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WENDY BENNETT and ROBERT OSBORNE,<br><br>    Plaintiffs,<br><br><br><br>      vs.<br><br><br><br>AETNA LIFE INSURANCE COMPANY, CIBER, INC. and THE CIBER INC. AETNA CHOICE POS II GROUP BENEFIT PLAN,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br><br><br><br>Case No. 2:12-CV-139 TS |

This ERISA case is before the Court on cross Motions for Summary Judgment. In addition, Plaintiffs have filed two Motions to Strike. For the reasons discussed below, the Court will grant in part and deny in part the cross Motions for Summary Judgment, and deny the Motions to Strike.

## I. FACTUAL BACKGROUND

Plaintiff Robert Osborne ("Osborne") was an employee of Defendant CIBER, Inc. ("CIBER") and was a participant in the CIBER INC. AETNA CHOICE POS II GROUP BENEFIT PLAN (the "Plan"). Osborne's wife, Wendy Bennett ("Bennett") was a beneficiary of

the Plan. Aetna Life Insurance Company ("Aetna") is the administrator for processing claims under the Plan.

On June 21, 2009, Plaintiffs were in Bali, Indonesia. Bennett went to BIMC Hospital in Bali after feeling bloated and nauseated for several days. Bennett had an exploratory laparotomy and sigmoid colostomy. During these procedures, a tumor was discovered that was suspected to be malignant.

While at BIMC Hospital, it was determined that Bennett needed to be evacuated to a higher care facility.[1] Bennett was transferred to St. Mark's Hospital in Salt Lake City, Utah via air ambulance transport ("AirMed"). At St. Mark's Hospital, the suspected colorectal cancer diagnosis was confirmed and she was treated for that condition. Both the doctor treating Bennett at BIMC Hospital and her doctor at St. Mark's Hospital stated that her AirMed transport from Bali to Salt Lake City was medically necessary.[2]

Plaintiffs submitted claims for Bennett's treatment at BIMC Hospital and for the AirMed costs. On October 8, 2009, Defendant Aetna sent Osborne an Explanation of Benefits ("EOB"). In the EOB, Aetna stated that it required additional information on the BIMC Hospital charges. As for the AirMed costs, Aetna stated: "Your plan covers professional ambulance service for emergency transport only. Since the service(s) submitted does not meet this requirement, the

---

[1]BEN 206.

[2]*Id*. at 204, 206.

service is not covered under your plan."[3]   Additionally, Aetna stated that "[c]harges for non

emergency transport are excluded from coverage under your plan."[4]

In response to the EOB, Plaintiffs contacted Aetna a number of times concerning

Bennett's claim.  On October 11, 2009, Osborne called Aetna to provide information about the

nature of Bennett's medical condition, the fact that she could not be effectively and safely treated

at BIMC Hospital, that her transport was an emergency based on Bennett's deteriorating

condition, and that it was medically necessary.[5]   Osborne also provided information about the

amount of the charges for the AirMed transport.[6]   This same information was provided by email.[7]

On October 14, 2009, Osborne wrote: "Please note that I am appealing this denial of

payment, and am faxing today the medical records regarding my wife's hospitalization in Bali."[8]

Another document from that same date entitled "Medical Claim Details" appears to have a

handwritten statement from Osborne indicating that he was appealing the denial.[9]

---

[3]*Id*. at 231.

[4]*Id*.

[5]Docket No. 37-15.

[6]*Id*.

[7]DEF 143.

[8]*Id*. at 146.

[9]*Id*. at 100.

On October 21, 2009, Osborne inquired as to whether Aetna had received the medical records he had faxed previously.[10] In response, Aetna stated that it had received the information and that it was reviewing the claim.[11]

On October 28, 2009, Osborne again sought confirmation that Aetna had received information regarding the necessity of the AirMed transport.[12] Aetna confirmed that it had received this information and stated that additional time was required for review.[13]

On November 4, 2009, Osborne sent a follow-up email detailing the information he provided in support of Bennett's claim.[14] Osborne stated: "Please advise on the status of your evaluation on this claim, or if you require additional information."[15] Aetna responded by stating that Osborne's appeal had been forwarded to the appropriate department and that a decision would be made within thirty days.[16]

Aetna denied Bennett's AirMed claim in a second EOB issued on November 7, 2009. The second EOB referenced only the AirMed claim and provided the following basis for denial: "This plan provides coverage for service and supplies that are deemed by Aetna to be necessary

---

[10]*Id*. at 127.

[11]*Id*.

[12]*Id*. at 129; Docket No. 37-15.

[13]DEF 129.

[14]*Id*. at 138.

[15]*Id*.

[16]*Id*.

for the diagnosis, care or treatment of the disease or injury involved.  Based on the information provided, this expense does not meet the coverage requirement."[17]  The second EOB did not mention the limitation of plan coverage for professional ambulance service, as the first EOB had done.

The EOB provided a box to check "[i]f you would like to appeal" and directs the recipient to send a written appeal along with the EOB to a certain address.[18]   The EOB then provides the following:

> You are entitled to a review (appeal) of this benefit determination if you have questions or do not agree.
> To obtain a review, you or your authorized representative should call our Member Services Department using the telephone number displayed on the member ID card or submit a request in writing to the Appeals Resolution Team address shown above . . . . You may also review documents relevant to your claim.  Verbal or written requests for review of the adverse determination must be communicated, mailed or delivered within 180 days following receipt of this explanation or such longer period as may be specified in your plan brochure or Summary Plan Description.[19]

On December 14, 2009, Osborne sent the following message to Aetna:

> You still don't have the claim amounts correct - the other insurance company paid $100,000 of the total AirMed amount, and we're only submitting $98,000 to Aetna as the secondary insurance provider.
> The other company, AIG, also recognized this as medically necessary, which is supported by the letter/statement from the doctor in Bali, and also from the Utah colo-rectal doctor, Dr. Edward J. Eyring.

---

[17]BEN at 228.

[18]*Id*. at 229.

[19]*Id*. at 230.

You have this documentation.  Please review and advise what steps we need to take to appeal.[20]

In response, Osborne was informed that he could appeal Aetna's decision.[21]  Specifically, Osborne was provided the following information:

How do you file an appeal?
You can file an appeal one of three ways:
1.  You can call the Member Services number on your ID card.
2.  You can write a letter to the address on the bottom of your explanation of benefits.
3.  You can use the 'Contact Us' link and email us that you want to appeal the decision.[22]

On January 7, 2010, Osborne sent an email to Aetna asking how to "determine what types of international medical or ambulatory services are covered, and the limits/conditions of those?"[23]

After this period, the parties have been unable to provide the Court with any other electronic communications between them, despite the fact that there is evidence showing such communications exist.[24]  In all, it appears that the parties have been unable to produce eleven electronic communications during the relevant time period.  Aetna states that it "does not know

---

[20]DEF at 135.

[21]*Id.*

[22]*Id.*

[23]*Id.* at 112.

[24]Docket No. 44, Ex. 1.

why there might be additional emails listed on the Screen Captures that would not have been retrieved as a result of Aetna's diligent search of its archived materials."[25]

In addition to these electronic communications, Defendants have provided the Court with seven electronic spreadsheets from an Aetna database used to store and log Aetna's responses to customer service inquiries. Aetna did not routinely record telephonic inquiries to customer service representatives during the relevant time period. However, a review of the spreadsheets shows that several calls were made by Plaintiffs to Aetna concerning the AirMed claim. Of particular interest is a series of entries made on February 15, 2010. These entries reference an inbound call concerning Plaintiffs' AirMed claim. Under the heading labeled "Request Type" most of the entries state "Claim Inquiry." However, two of the entries state "Appeal Inquiry."

On May 23, 2010, Osborne wrote to Aetna to appeal the denial of coverage. The letter stated:

> Even though Aetna Customer service advised via email that an appeal could be handled via telephone or through the website, when I spoke with Customer Service by phone, they advised that the appeal needs to be in writing. Therefore please record this letter and the referenced Attachments as a written and formal appeal for payment of the Claim ID PZJKH7YCT.[26]

The letter went on to provide information in support of the AirMed claim.

On June 23, 2010, Aetna responded with two letters. In a letter directed to Osborne, Aetna stated that he was not authorized to act on Bennett's behalf.[27] In a letter to Bennett, Aetna

---

[25]Decl. of Laura L. Jackson in Response to Court's Order Dated July 1, 2013, ¶ 6.

[26]BEN at 235.

[27]*Id*. at 239.

stated that her appeal came too late. "Therefore, a review of this appeal will not be conducted and Aetna will consider the original decision to be final."[28]

On February 18, 2011, Plaintiffs' counsel wrote to Aetna and CIBER. Counsel requested various plan documents and all documents related to Bennett's claim. Aetna responded on March 15, 2011, by providing some, but not all, documents related to Bennett's claim. Aetna advised counsel that he should contact CIBER for documents related to the plan.

On March 21, 2011, counsel again wrote to Aetna requesting all documents related to Plaintiffs' claim. Aetna responded by resubmitting the same documents it provided in response to counsel's prior letter.

Also on March 21, 2011, counsel wrote to CIBER requesting plan documents. CIBER responded by providing the Summary Plan Description and the Administrative Services Agreement between CIBER and Aetna. Counsel sent two additional letters to CIBER seeking all plan documents. CIBER did not respond to either letter.

The parties have each filed a Motion for Summary Judgment. Defendants argue that summary judgment in their favor is appropriate because: (1) Plaintiffs failed to exhaust their remedies under the plan; (2) Plaintiffs failed to submit their claim for medical expenses of $10,006; and (3) Plaintiffs are not entitled to statutory penalties. Plaintiffs, in turn, argue that summary judgment should be granted in their favor because: (1) Defendants' denial of the AirMed claim is not supported by the record; and (2) they are entitled to statutory damages. If Plaintiffs prevail, they also seek prejudgment interest, attorney's fees, and costs.

---

[28]*Id*. at 238.

## II.  MOTIONS TO STRIKE

Before addressing the merits of the Motions for Summary Judgment, the Court must first consider Plaintiffs' two Motions to Strike.  In those Motions, Plaintiffs seek to strike the exhibits, an affidavit, and two declarations supplied by Defendants in support of their Motion for Summary Judgment.  Plaintiffs argue that the documents and statements made in the affidavit and declarations were not previously provided and should not be considered.

Generally, the Court's review in an ERISA case is limited to the administrative record.[29] Most of the documents cited to in the affidavit and declarations are the same documents that Plaintiffs provided with their Pre-Litigation Record.  Therefore, those documents need not be stricken.  The more problematic issue arises from the statements made in the affidavit and declarations that are not supported by the other documents in the record.  However, even considering these statements, the outcome of the Motions for Summary Judgment does not change.  Therefore, the Court will deny Plaintiffs' Motions to Strike.

## III.  SUMMARY JUDGMENT

In an ERISA case, where both parties move for summary judgment and stipulate that no trial is necessary, "summary judgment is merely a vehicle for deciding the case; the factual

---

[29]*Foster v. PPG Indus. Inc.*, 693 F.3d 1226, 1231 (10th Cir. 2012) ("In reviewing the administrator's actions, we are limited to the administrative record—the materials compiled by the administrator in the course of making his decision.") (quotation marks and citation omitted).

determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor."[30]

A.    EXHAUSTION

Defendants first argue that Plaintiffs' claims are barred because Plaintiffs failed to exhaust their remedies under the Plan.  Specifically, Defendants argue that the Plan required a written appeal within 180 days of the denial of the claim for benefits.  Defendants argue that the second EOB was issued November 7, 2009, but that Plaintiffs did not submit a written appeal until May 23, 2010, after the 180 day period had run.  Defendants argue that Plaintiffs' claims are therefore barred.  Plaintiffs argue that they did exhaust their remedies or were excused from doing so because of Defendants' conduct.

ERISA contains no explicit exhaustion requirement.[31]  However, the Tenth Circuit has held that "exhaustion of administrative (*i.e.*, company—or plan—provided) remedies is an implicit prerequisite to seeking judicial relief."[32]  Exhaustion is an affirmative defense and, therefore, the burden is on Defendants to show that Plaintiffs failed to exhaust their remedies under the plan.[33]

---

[30]*LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010).

[31]*McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir. 1998).

[32]*Held v. Mfg. Hanover Leasing Corp.*, 912 F.2d 1197, 1206 (10th Cir. 1990).

[33]*Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007); *Wilson v. Kimberly-Clark Corp.*, 254 F. App'x 280, 287 (5th Cir. 2007); *Jones v. State Wide Aluminum, Inc.*, 246 F. Supp. 2d 1018, 1023 (N.D. Ind. 2003).

The Court must first address Defendants' contention that the Plan required any appeal to be made in writing. The Summary Plan Description states: "You may file an appeal in writing to Aetna."[34] However, the Summary Plan Description also states that "[i]f your appeal is of an urgent nature, you may call Aetna's Member Services Unit."[35]

The EOBs provided to Plaintiffs provided a box to check if the recipient sought to appeal and directed that person to send a written appeal to the address provided. However, the EOBs further stated that "[y]ou are entitled to a review (appeal) of this benefit determination if you have questions or do not agree."[36] The EOBs provided the following instruction:

> To obtain a review, you or your authorized representative should call our Member Services Department using the telephone number displayed on the member ID card or submit a request in writing to the Appeals Resolution Team address shown above . . . . You may also review documents relevant to your claim. Verbal or written requests for review of the adverse determination must be communicated, mailed or delivered within 180 days following receipt of this explanation or such longer period as may be specified in your plan brochure or Summary Plan Description.[37]

At oral argument, Defendants' counsel argued that these different provisions of the EOB correspond to different levels of appeals and that Plaintiffs' appeal had to be in writing. This argument is simply not supported by the language of the EOB. The EOB does not differentiate between levels of review and makes clear that appeals can be made either orally or in writing.

---

[34]BEN at 62.

[35]*Id.*

[36]*Id.* at 230.

[37]*Id.*

In addition to the statements in the EOB, Osborne was advised via email that he could appeal by calling, writing, or emailing Aetna. After the second EOB was issued, Osborne emailed Aetna. In that email, Osborne specifically asked Aetna to review its denial and sought information on how to appeal.[38] Aetna provided Osborne the following information:

> How do you file an appeal?
> You can file an appeal one of three ways:
> 1. You can call the Member Services number on your ID card.
> 2. You can write a letter to the address on the bottom of your explanation of benefits.
> 3. You can use the 'Contact Us' link and email us that you want to appeal the decision.[39]

Based upon all of this evidence, the Court cannot agree with Defendants' argument that Plaintiffs' appeal was required to be in writing. Rather, Plaintiffs were repeatedly informed that there were several ways in which appeal could be sought. The Court must next consider whether Plaintiffs actually did appeal the denial of the AirMed claim.

The evidence concerning Plaintiffs' attempts to appeal the denial of benefits is less than clear, largely because of Defendants' poor record keeping. The records that have been provided to the Court show that after the first EOB was issued, Osborne repeatedly communicated with Aetna to appeal that denial. Osborne provided Aetna with additional documentation to support Bennett's claim and continually followed up on the claim during the period that Aetna was conducting its review.

---

[38]DEF at 135.

[39]*Id.*

Aetna then issued its second EOB on November 7, 2009, again denying the AirMed claim. Osborne continued communicating with Aetna about the claim. On December 14, 2009, a little over a month after the second EOB was issued, Osborne sent the following message to Aetna:

> You still don't have the claim amounts correct - the other insurance company paid $100,000 of the total AirMed amount, and we're only submitting $98,000 to Aetna as the secondary insurance provider.
> The other company, AIG, also recognized this as medically necessary, which is supported by the letter/statement from the doctor in Bali, and also from the Utah colo-rectal doctor, Dr. Edward J. Eyring.
> You have this documentation. Please review and advise what steps we need to take to appeal.[40]

As is detailed above, Osborne was informed that he could appeal by calling, writing, or emailing Aetna. The only writing produced by the parties that mentions an appeal is the May 23, 2010 letter. However, there are several additional emails during the relevant time period that Aetna has not been able to provide. Aetna states that it "does not know why there might be additional emails listed on the Screen Captures that would not have been retrieved as a result of Aetna's diligent search of its archived materials."[41] In addition to the emails that have not been produced, there are records of a number of telephone calls made by Plaintiffs to Aetna concerning the AirMed claim, at least some of which reference an "Appeal Inquiry." These conversations were not recorded and, therefore, have not been produced.

---

[40]*Id.*

[41]Decl. of Laura L. Jackson in Response to Court's Order Dated July 1, 2013, ¶ 6.

Based on the materials provided, as well as the fact that a number of communications have not been provided, the Court finds that Defendants have failed to meet their burden of showing that Plaintiffs failed to exhaust their remedies under the plan.

As an initial matter, it seems that Osborne's December 14, 2009 email could be construed as an appeal. This email, which was in writing and was sent to Aetna within 180 days after the issuance of the second EOB, specifically referenced the AirMed claim. That email provided clarification of the amount Plaintiffs sought from Aetna, referenced evidence concerning medical necessity, asked Aetna to review its denial, and sought further guidance on how to appeal.

Even if this email from Osborne is not construed as an appeal, Defendants still have not met their burden. The record reflects that Osborne had nearly continuous contact with Aetna concerning the AirMed claim from the time the claim was submitted to the time that Aetna responded to Osborne's May 23 appeal. However, much of the communication from the relevant time period has not been produced by Aetna. Given the continued communication that Osborne had with Aetna concerning the denial of Bennett's claim, it strains credulity to believe that Plaintiffs did not seek to appeal in these various communications.

The documentation related to the telephone calls made by Plaintiffs to Aetna supports this conclusion. Defendants originally provided phone call documentation, indicating that only two calls were made by Osborne to Aetna. Osborne, in his Declaration, stated that this record did not "accurately reflect the many telephone calls I made to Aetna to discuss and appeal the Plan's denial of coverage for Wendy's AirMed transport costs."[42] Osborne was correct.

---

[42]Docket No. 44, ¶ 10.

In response to the Court's prior order, Defendants have now provided the Court with seven electronic spreadsheets from an Aetna database used to store and log Aetna's responses to customer service inquiries. Unfortunately, Aetna did not routinely record telephonic inquiries to customer service representatives during the relevant time period. Thus, there is no way to know exactly what was said during the phone calls Plaintiffs made to Aetna representatives.

However, a review of the spreadsheets shows that several calls were made by Plaintiffs to Aetna concerning the AirMed claim. Of particular interest are a series of entries made on February 15, 2010. These entries reference an inbound call concerning Plaintiffs' AirMed claim. Under the heading labeled "Request Type" most of the entries state "Claim Inquiry." However, two of the entries state "Appeal Inquiry." It is reasonable to infer that Plaintiffs attempted to appeal the denial during this phone call.

This inference is supported by the statement made in Osborne's May 23, 2010 letter, where he stated that "[e]ven though Aetna Customer Service advised via email that an appeal could be handled via telephone or through the website, when I spoke with Customer Service by phone, they advised that the appeal needs to be in writing."[43] This statement is, in turn, supported by the email documentation, discussed above, where Osborne was advised that he could appeal either by phone, email, or writing.

In the end, it is Defendants' burden to show that Plaintiffs failed to exhaust their remedies under the plan. Defendants have not carried their burden. The evidence shows that Plaintiffs were provided conflicting information on how to appeal the denial of benefits. The evidence also

---

[43]BEN at 211.

shows that Plaintiffs frequently contacted Aetna concerning the AirMed Claim. There is also evidence to suggest that Plaintiffs attempted to appeal the AirMed claim as directed by Aetna. The gap in the record during the period relevant to this issue is extremely troubling and, as stated, it is simply not believable to suggest that Plaintiffs did not seek an appeal in one of the many communications that Defendants have been unable to provide.

In making this determination, the Court has considered Defendants' conduct, both pre- and post-litigation. Prior to filing suit, Plaintiffs' counsel repeatedly asked for information concerning the communications Plaintiffs had with Defendants. Defendants failed to provide all of these communications and it was not until Defendants were ordered by the Court to turn over such communications that Defendants provided many of the documents at issue. Even with the Court order, Defendants have been unable to provide all of the communications between the parties, with many of those communications occurring during the relevant time period. Defendants are unable to provide any explanation for their failure to provide this evidence. Based upon this behavior, the Court cannot find credible Defendants' claim that Plaintiffs failed to exhaust. Rather, the evidence suggests that Plaintiffs attempted to appeal and that Defendants thwarted their efforts to do so. Therefore, the Court finds that Defendants have failed to meet their burden to show that Plaintiffs failed to exhausted their remedies as to the AirMed claim.

Plaintiffs argue that, if the Court finds that they failed to exhaust their remedies under the plan, Defendants' failure to comply with the requirements of ERISA and failure to comply with the claims procedure regulations under ERISA excuse any failure to exhaust. Because the Court

finds that Defendants have failed to meet their burden to show that Plaintiffs failed to exhaust, the Court need not address this issue.

B.      STANDARD OF REVIEW

A denial of benefits under an ERISA plan "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[44]  If, however, "the plan gives an administrator discretionary authority to determine eligibility for benefits or to construe its terms, we employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious."[45]

In this case, there is no dispute that the Plan provides the plan administrator discretion to interpret the terms of the plan and determine eligibility for benefits.  Thus, generally a deferential standard would apply.  However, Plaintiffs argue that a de novo standard of review is called for in this case.  Plaintiffs argue that Defendants have "forfeited their right to deferential standard due to repeated, significant failures to comply with ERISA's claims procedure review regulations in processing Plaintiffs' claims and handling pre-litigation appeal process."[46]

Ultimately, the Court need not decide what standard of review applies.  Even under a deferential standard of review, Defendants' decision concerning the AirMed claim cannot be sustained.

---

[44]*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[45]*Holcomb v. UNUM Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009) (quotation marks and citation omitted).

[46]Docket No. 50, at 32.

C.     AIRMED CLAIM

Defendants denied the AirMed claim because it was not medically necessary.[47]  In

evaluating Aetna's denial of Plaintiffs' AirMed claim the Court will assume that the deferential

standard applies.

> In applying the arbitrary and capricious standard, the decision will be
> upheld so long as it is predicated on a reasoned basis.  In fact, there is no
> requirement that the basis relied upon be the only logical one or even the
> superlative one.  Accordingly, [the Court's] review inquires whether the
> administrator's decision resides somewhere on a continuum of
> reasonableness—even if on the low end.
> A lack of substantial evidence often indicates an arbitrary and capricious
> decision.  Substantial evidence is of the sort that a reasonable mind could accept
> as sufficient to support a conclusion.  Substantial evidence means more than a
> scintilla, of course, yet less than a preponderance.  The substantiality of the
> evidence is evaluated against the backdrop of the administrative record as a
> whole.[48]

In this case, there is a lack of any evidence, let alone substantial evidence, that would

support Defendants' determination that Bennett's AirMed transportation was not medically

necessary.  The only evidence in the record reveals that two different treating physicians, in both

Bali and Utah, opined that Bennett's transportation was medically necessary.  Additionally, there

is evidence that another insurer covered part of the AirMed cost, presumably finding that such

transportation was medically necessary.  There is absolutely no evidence to the contrary.

---

[47]Defendants have also pointed to language in the Plan concerning the limitation of
coverage for professional ambulance services.  While the first EOB provided this as a basis for
denial, the second EOB did not.

[48]*Adamson v. UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006) (internal
quotation marks and citations omitted).

The only evidence Defendants have presented on this point is found in the Second Declaration of Laura L. Jackson.  In her Second Declaration, Ms. Jackson states that the denial of Bennett's claim

> was made only after review of the medical records and the documentation submitted in support of medical necessity, by an Aetna medical director.  The reviewer is board certified in internal medicine and is a licensed physician in the states of Arizona and Connecticut.  He has 18 years of private practice experience in internal medicine including two years practicing as a hospitalist in the state of Connecticut.[49]

Ms. Jackson further states that affirmation of the denial of the claim, which came after review of the additional information provided by Mr. Osborne, was based on a determination that the materials did not demonstrate that BIMC Hospital was not able to diagnose and treat Bennett.[50]

This information does not meet the substantial evidence standard.  While Defendants contend that Bennett's claim was reviewed by an individual with "the professional training and credentials to address the issue of medical necessity,"[51] Defendants have failed to provide the Court with any report or other documentation created by this person explaining his or her rationale.  Indeed, the Declaration of Ms. Jackson does not even go so far as to state that this individual opined that Bennett's transportation was not medically necessary.  It is reasonable to believe that if such documentation existed, Defendants would have provided it to the Court in response to Plaintiffs' Motion for Summary Judgment.

---

[49]Docket No. 41-2, ¶ 6.

[50]*Id*. ¶ 5.

[51]*Id*. ¶ 6.

Further, Defendants have failed to provide the Court with even this person's name, let alone any other information that would allow for any sort of meaningful review as to his or qualification to make a medical necessity assessment. The information provided by Defendants in response to Plaintiffs' Motion is insufficient under any standard of review to sustain Defendants' denial. Therefore, summary judgment on behalf of Plaintiffs is appropriate.

D.    MEDICAL EXPENSE CLAIM FOR $10,006

Plaintiffs' Amended Complaint asserts a claim for medical expenses of $10,006 for expenses incurred at BIMC Hospital in Bali, Indonesia. Defendants seek summary judgment, because they argue that Plaintiffs did not submit a claim for this amount.

At oral argument, counsel for Plaintiffs conceded that he could not produce documentation that this claim was submitted to Aetna, but had little confidence in the record. While the Court agrees with Plaintiffs' assessment that the record in this case is lacking, there is nothing to suggest that Plaintiffs submitted this claim. Further, even if Plaintiffs did submit a claim for this $10,006, there is nothing in the record to show that they exhausted their remedies under the plan with regard to this amount. The only evidence on the issue of exhaustion relates to the AirMed claim. Therefore, summary judgment in favor of Defendants is appropriate on this claim.

E.    STATUTORY PENALTIES

Plaintiffs request penalties for Defendants' alleged failure to provide certain documents under which the Plan is established or operated.

29 U.S.C. § 1024(b)(4) provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated . . . ." 29 U.S.C. § 1132(c)(1) provides for statutory penalties for failing to produce documents pursuant to § 1024(b)(4).

Defendants argue that Plaintiffs are not entitled to statutory penalties because they have provided Plaintiffs with all documents under which the plan is established or operated, specifically the Summary Plan Description and the Administrative Services Agreement between CIBER and Aetna. Plaintiffs, on the other hand, argue that the documents provided by Defendants refer to another document that has not been provided, specifically the Benefit Plan references a "Contract" between Aetna and CIBER.[52]

When asked directly about this "Contract," Defendants' counsel stated that no such contract existed and that there are no other plan documents that have not been supplied to Plaintiffs. This is supported by the the Affidavit of David Plisko, wherein Mr. Plisko states that Defendants provided "all of the documents under which the Plan was operated at the time relevant to the Claim."[53] Plaintiffs have presented no evidence to the contrary. Therefore, the Court finds that Plaintiffs are not entitled to statutory penalties.

---

[52]BEN 86.

[53]Docket No. 37-1, ¶ 10.

F.     PREJUDGMENT INTEREST, ATTORNEY'S FEES, AND COSTS

Plaintiffs request prejudgment interest, attorney's fees, and costs should they prevail. As discussed, the Court finds that Plaintiffs prevail on the AirMed claim.

   1.     *Prejudgment Interest*

"Under ERISA, '[p]rejudgment interest is . . . available in the court's discretion.'"[54] "Calculation of the rate for prejudgment interest also 'rests firmly within the sound discretion of the trial court.'"[55] "Courts commonly look to state statutory prejudgment interest provisions as guidelines for a reasonable rate."[56]

Utah law provides that "[u]nless parties to a lawful contract specify a different rate of interest, the legal rate of interest for the loan or forbearance of any money, goods, or chose in action shall be 10% per annum."[57]

In this case, Plaintiffs argue that they "have suffered significant financial hardship in being required to pay the charges for Wendy's air transport from their own funds."[58] This is undoubtedly true. Based on this hardship, the Court finds that it is reasonable to award prejudgment interest in this case. The Court further finds that the rate established under Utah law is reasonable under these circumstances.

---

   [54]*Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1016 (10th Cir. 2008) (quoting *Benesowitz v. Metro. Life Ins. Co.*, 514 F.3d 174, 176 (2d Cir. 2007)).

   [55]*Id.* (quoting *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1287 (10th Cir. 2002)).

   [56]*Id.*

   [57]Utah Code Ann. § 15-1-1(2).

   [58]Docket No. 36, at 24.

*2.      Attorney's Fees and Costs*

Pursuant to 29 U.S.C. § 1132(g)(1), "the court in its discretion may allow a reasonable

attorney's fee and costs of action to either party."  "A court may award fees and costs under 29

U.S.C. § 1132(g)(1) as long as the fee claimant has achieved some degree of success on the

merits."[59]

The Tenth Circuit

has established five factors a court may consider in deciding whether to exercise
its discretion to award attorney's fees and costs: (1) the degree of the opposing
party's culpability or bad faith; (2) the opposing party's ability to satisfy an award
of fees; (3) whether an award of fees would deter others from acting under similar
circumstances; (4) whether the party requesting fees sought to benefit all
participants and beneficiaries of an ERISA plan or to resolve a significant legal
question regarding ERISA; and (5) the relative merits of the parties' positions.
No single factor is dispositive and a court need not consider every factor in every
case.[60]

Considering these factors, the Court finds that an award of attorney's fees and costs is

appropriate in this case.  As to the first and fifth factors, Defendants have provided absolutely no

evidence to support their position concerning the denial of the AirMed claim.  While Defendant

has stated that an individual with appropriate medical credentials reviewed Bennett's claim, there

is nothing more than a self-serving declaration to support this contention.  Defendants have failed

to identify this person and have failed to provide any sort of documentation setting out this

person's rationale.  Further, as discussed in detail, Defendants have not acted in an evenhanded

_____

[59]*Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013)
(quotation marks and citation omitted).

[60]*Id.* (citation omitted).

23

manner in dealing with Plaintiffs' claim. Aetna provided Plaintiffs conflicting information concerning the requirements to appeal the denial of benefits and the evidence seems to suggest that Aetna interfered with Plaintiffs' efforts to appeal the denial. Additionally, Defendants failed to fully respond to the requests of counsel prior to litigation, interfering with Plaintiffs' ability to bring this suit. Further, Defendants have been unable to provide the Court with all of the relevant documentation concerning Plaintiffs' attempts to appeal the denial of benefits.

On the second factor, it is clear that Defendants have the ability to satisfy an award of fees.

Third, an award of fees would also work to deter Defendants and others from acting in a similar manner and would encourage claims administrators to operate in the manner envisioned by ERISA and its regulations.

Finally, though Plaintiffs do not represent others and this case does not resolve a significant legal question, an award of fees will nonetheless benefit the participants of the plan as it will help to deter the type of conduct involved here.

## V. CONCLUSION

It is therefore

ORDERED that Plaintiffs' Motions to Strike (Docket Nos. 45 and 51) are DENIED. It is further

ORDERED that the parties' cross Motions for Summary Judgment (Docket Nos. 36 and 37) are GRANTED IN PART AND DENIED IN PART.

The Clerk of the Court is directed to enter judgment in favor of Plaintiffs and against Defendants in the amount of $93,656.

Within fourteen (14) days of this Order, Plaintiffs' counsel is directed to supply the Court with a calculation of prejudgment interest, attorney's fees, and costs. The Court will supplement the Judgment with those amounts.

The Clerk of the Court is directed to close this case forthwith.

DATED   August 30, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge